UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY S. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 4244 |
| v. | ) | |
| | ) | |
| ANTHONY PRINCIPI, Secretary of | ) | Judge Leinenweber |
| Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, ANTHONY PRINCIPI, Secretary of Veterans Affairs, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, pursuant to Rule 56 of the Federal Rules of Civil Procedure hereby moves this Court for summary judgment in his favor. The grounds in support of this motion are set forth in the attached memorandum.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By /s/ Daniel E. May
DANIEL E. MAY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-8694

AFFIDAVIT OF MAILING

STATE OF ILLINOIS   )
                    ) SS
COUNTY OF COOK      )

LENORA E. NAPE being first duly sworn on oath deposes and says that she is employed in the Office of the United States Attorney for the Northern District of Illinois; that on the 7th day of January 2002, she placed a copy of DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and SECRETARY'S LOCAL RULE 56.1 MATERIAL STATEMENT OF FACTS in a postage prepaid envelope addressed to each of the following named individual(s) and caused said envelope to be deposited in the United States mail chute located in the Everett McKinley Dirksen Building, Chicago, Illinois on said date at the hour of 5:00 p.m.

>   Margaret A. Gisch
>   Field & Golan
>   Three First National Plaza
>   70 West Madison Street, Suite 1500
>   Chicago, Illinois 60602-4206

*/s/ Lenora E. Nape*

SUBSCRIBED AND SWORN TO before me this 7th day of January 2002

*/s/ Leslie Steffen*
NOTARY PUBLIC

"OFFICIAL SEAL"
LESLIE STEFFEN
NOTARY PUBLIC, STATE OF ILLINOIS
COMMISSION EXPIRES 9/11/2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN - 7 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| NANCY S. KING, | ) |
| Plaintiff, | ) 00 C 4244 |
| v. | ) |
| | ) Judge Leinenweber |
| ANTHONY PRINCIPI, Secretary of Veterans Affairs, | ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Introduction

In this employment discrimination case, plaintiff Nancy King alleges that her former employer, the United States Department of Veterans Affairs ("VA"), discriminated against her in 1992 and 1993 because of her age, race, color, or retaliation based upon her prior EEO activity. The VA seeks summary judgment because King cannot establish a *prima facie* case of age, race or color discrimination, and there is no evidence that the VA retaliated against her. The undisputed evidence — which is corroborated by the plaintiff's own testimony — shows that the VA sought to improve King's job performance but eventually terminated her for legitimate nondiscriminatory reasons. It also shows that this case has nothing to do with age, race, color or retaliation.

### Statement of Facts

Nancy King began her VA employment in 1987 as a ward clerk, also referred to as a medical clerk or ward secretary. *See* 56.1(A) ¶ 1.[1] From October 1987 until December 1987, she worked

---

[1] "56.1(A) ¶" references are to the numbered paragraphs of defendant's Local Rule 56.1 Statement of Material Facts.



under the supervision of Linda McPherson. 56.1(A) ¶ 2. In December 1987, she was transferred to another medical unit at the VA due to performance problems and placed under the supervision of Candice Evans. 56.1(A) ¶ 3.

King began to be cited for numerous performance problems beginning in 1988. 56.1(A) ¶ 4, 5, 6, 7. *See also* Def. Ex. 4A. These included placement on several performance improvement plans ("PIPs") in order to assist King achieve successful performance reviews. 56.1(A) ¶ 5. In April 1992, King contacted an EEO counselor, Pauline Geary. 56.1(A) ¶ 49. Around this time period, King was offered an opportunity to change supervisors away from Candice Evans. 56.1(A) ¶ 10. On April 8, 1992, King's appraisal period was extended an additional 60 days to accomplish additional computer training. 56.1(A) ¶ 11.

In August 1992, the staff on the medical unit where King was assigned wrote a memorandum to the chief of the Medical Administration Services, James Alexander. 56.1(A) ¶ 9. The memorandum outlined several performance problems of King that "seriously hampered the day-to-day effectiveness" of the medical unit. 56.1(A) ¶ 9. These included King's lack of interpersonal skills, poor performance, and unwillingness to assist other staff, thereby threatening the well-being of patients on the medical unit. 56.1(A) ¶ 9.

As a result of the memorandum, a written warning was given to King outlining her poor performance in 1992. 56.1(A) ¶ 13. King was given until November 13, 1992, to improve her performance or face possible demotion or seperation. 56.1(A) ¶ 13, Def. Ex. 10 at 2-3. Subsequently, King claimed that the allegations by the medical staff constituted discrimination and harassment, presumably because of her EEO contact in April 1992. 56.1(A) ¶ 14, Def. Ex. 11. Because of the allegations, an Administrative Board of Investigation was begun. 56.1(A) ¶ 14. In

2

addition, King was reassigned to another unit during the pendency of the investigation. 56.1(A) ¶ 15.

The Board of Investigation consisted of three individuals: Randall Hutchinson (an over 40 African-American male), Vernon Estes (an African-American male), and Florence Marquis (a female). 56.1(A) ¶ 16. The Board of Investigation conducted numerous interviews, took numerous sworn statements and reviewed documents. See Def. Ex. 15 at 1-4. Based on its investigation, the Board found no discrimination and found numerous examples of King's unacceptable performance. 56.1(A) ¶ 17, Def. Ex. 4A. King testified that she did not believe that members of the Board of Investigation were biased or discriminated against her during the process or in reaching their conclusions. Def. Ex. 1 at 49. As a result of the Board's findings, on November 18, 1992, King was returned to her position and her performance apprisal was extended to February 1, 1993. 56.1(A) ¶ 21, Def. Ex. 16. In December 1992, King again contacted an EEO counselor about her situation. 56.1(A) ¶ 49.

On January 4, 1993, King was notified that her performance continued to be unacceptable and she would be denied a pay increase. 56.1(A) ¶ 23. On February 2, 1993, King was informed that the PIP that had been extended had expired and that she continued to perform her job at an unacceptable level. 56.1(A) ¶ 26. She again was reassigned to another unit. 56.1(A) ¶ 27. On March 3, 1993, King filed a formal EEO complaint of discrimination that was then accepted for processing on March 5, 1993. 56.1(A) ¶ 28-29.

On April 16, 1993, a proposed notice of removal was prepared and given to King. 56.1(A) ¶ 30. The removal letter listed numerous (19) instances where King had failed to demonstrate acceptable performance while she was under the performance improvement plan. Def. Ex. 23.

A congressional inquiry was received at the VA from Congressman John Porter in May 1993. 56.1(A) ¶ 32. The VA responded to the congressional inquiry by way of letter May 25, 1993 in detailing the history of King's employment with the VA. 56.1(A) ¶ 33. The letter cited again the numerous errors that King made in the job and that are critical to patient care. Def. Ex. 25 at 2. In addition, the letter cited the extra training and review that King received in her job. Def. Ex. 25 at 2.

On August 6, 1993, King received a letter from the VA Medical Center Director, A.S. Pate, stating that he had reviewed the evidence before him and approved her removal from the VA effective August 20, 1993. 56.1(A) ¶ 26. King was informed of her right to appeal to the Merit System Protection Board ("MSPB"). Def. Ex. 27. On October 22, 1993, King appealed to the MSPB. 56.1(A) ¶ 35. The MSPB dismissed the appeal as untimely on November 16, 1993. 56.1(A) ¶ 36. The MSPB held that King had been advised as to the 20-day appeal limit, and even though the MSPB invited her to show evidence to waive the 20-day appeal limit, King failed to respond or produce evidence. Def. Ex. 28 at 2.

After investigation of King's EEO complaint, the complaint was submitted to the Office of General Counsel for the VA. On May 31, 1994, the Office of General Counsel dismissed the allegations in the EEO complaint as being not previously raised or being moot due to the subsequent removal in August 1993. 56.1(A) ¶ 37. On June 6, 1994, King timely appealed the VA's dismissal to the EEOC. Def. Ex. 30 at 1. In a decision issued January 5, 1995, the EEOC remanded the complaint back to the VA for processing of several allegations. 56.1(A) ¶ 38; Def. Ex. 30 at 4. Subsequently, on June 14, 1995, King requested a hearing before an ALJ on the remaining issues. On September 12, 1996, the ALJ issued a decision after evidentiary hearing finding that King had

4

failed to demonstrate that the VA's articulated, non-discriminatory reasons for its actions were a pretext for discrimination. 56.1(A) ¶ 40; Def. Ex. 32 at 17. On October 10, 1996, the VA again adopted the ALJ's decision as the final agency decision. 56.1(A) ¶ 41.

As was her right, King appealed the final agency decision to the EEOC. 56.1(A) ¶ 42. On May 14, 1998, the EEOC issued another decision on this case, again affirming the ALJ's finding of no discrimination. 56.1(A) ¶ 43. The EEOC found that King had presented no evidence during the investigative process, ALJ evidentiary hearing, or on appeal that the VA had discriminated against her. Def. Ex. 34 at 2. Again as was her right, King asked the EEOC to reconsider its decision which the EEOC denied on March 24, 2000. 56.1(A) ¶ 44, 45. Left with no other appeal avenues, King filed this lawsuit on July 13, 2000. 56.1(A) ¶ 46.

In this case, King alleges race, color, age and retaliation discrimination. Def. Ex. 1 at 64. The discriminatory acts consisted of: (1) a denial of a January 4, 1993 within-grade pay increase by supervisor Candice Evans, (2) issuance of a warning of unacceptable performance/notice of opportunity period in August 1992, (3) failure to receive a performance evaluation for the 1992-1993 time period, (4) failure of the VA supervisory staff to assist King in completion of three worker's compensation claims filed by her in the 1992-1993 time period, and (5) removal of King from the VA in 1993. 56.1(A) ¶ 47; Def. Ex. 37 at 3-4; Def. Ex. 1 at 66-71. King alleges that Candice Evans, Jacqueline Peterson, James Alexander, Pamela Devore and other members of the VA discriminated against her. 56.1(A) ¶ 48; Def. Ex. 1; Def. Ex. 32 at 7.

## Legal Standard

Summary judgment is appropriate if the evidence provided to the court shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law. Federal Rule of Civil Procedure 56(c). The evidence must be viewed in the light most favorable to the party opposing the motion. *Kizer v. Children's Learning Center*, 962 F.2d 608, 611 (7th Cir. 1992). The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Where the nonmoving party fails to make a sufficient showing on an essential element of his case, on which he would bear the burden of proof at trial, summary judgment is proper. *Id.*, at 322-23; *Baucher v. Eastern Ind. Prod. Credit Ass'n*, 906 F.2d 332, 334 (7th Cir. 1990).

The non-moving party cannot rest on the pleadings alone, but must designate facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Federal Rule of Civil Procedure 56(e); *Celotex*, 477 U.S. at 324. Even where a factual dispute exists, unless it is outcome determinative, summary judgment will not be precluded. *Harris Trust and Savings Bank v. Edelson*, 859 F.2d 553 (7th Cir. 1988).

Under settled Title VII and ADEA law, King may attempt to prove her race and age discrimination claim by means of direct evidence of discrimination or, alternatively, through the indirect, burden-shifting formula established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under this method, King bears the burden of establishing a *prima facie* case of discrimination. *See Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1113 (7th Cir. 1992). King cannot withstand the VA's motion for summary judgment if she fails to make a *prima facie* case. To do so, she must establish that (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside her protected class more favorably. *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir. 1999).

6

If King succeeds in establishing a *prima facie* case, "the burden of production shifts to the defendant, which must articulate a legitimate, non-discriminatory reason for the adverse employment action." *Tyler v. Runyon*, 70 F.3d 458, 467 (7th Cir. 1995). If the defendant succeeds, "the ultimate burden is with the King, who must prove that the employer's proffered reason is a mere pretext for discrimination." *Id.* In order to prove pretext, King must prove that the Department's decision was either a lie or not based in fact. *Mills v. Health Care Services Corporation*, 171 F.3d 450, 458 (7th Cir. 1999).

King also alleges that she was retaliated against after she had EEO contact in April 1992. To succeed on her retaliation claim, King must show that (1) that she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal link between the adverse employment action and his participation in the protected activity. *Hoffman-Dombrowski v. Arlington International Racecourse, Inc.*, 254 F.3d 633, 653 (7th Cir. 2001); *Smart v. Ball State University*, 89 F.3d 437 (7th Cir. 1996). As in the context of a disparate treatment claim, fulfillment of the *prima facie* case shifts the burden to the defendant to articulate a non-retaliatory reason for the challenged action, and after such a reason is provided, King must show it is pretextual. *Hoffman-Dombrowski*, 254 F.3d at 653.

## Argument

This case does not warrant a trial because the King's claims have no legal or factual merit. Assuming that King can establish a *prima facie* case of discrimination under any of her claimed bases, King's own testimony is tantamount to an admission that her claims are based merely on her speculation. First, revealing that she has no direct evidence, King has presented no evidence or testimony at any stage that she ever heard any management officials make any derogatory comments

7

about her age, race or color. Nor can King even begin to prove that the reasons for the VA's actions against her were pretextual. The VA will address each discriminatory act claimed by Ms. King and demonstrate a legitimate, non-discriminatory reason for the VA's action.

**1.    Issuance of a Warning of Unacceptable Performance in August 1992**

King initially alleges that in 1992, her supervisors started a pattern of discrimination that led to her removal in August 1993. A complete review of the factual record, however, reveals that since 1988, King had experienced performance problems that increased in seriousness despite the extensive training and individual attention given to her. The issuance of the August 1992 warning was justified based upon the King's work record.

After King began her VA employment in October 1987, she was transferred to another medical unit at the VA due to performance problems. King continued to be cited for numerous performance problems. These invariably included placement on several performance improvement plans to assist King achieve successful performance reviews. 56.1(A) ¶ 4, 5, 6, 7. In August 1992, medical and nursing staff on the patient unit where King was assigned wrote a memorandum to the VA administration complaining of serious performances problems, including lack of interpersonal skills, poor performance, unwillingness to assist other staff. In the staff's opinion, King "seriously hampered the day-to-day effectiveness" of the medical unit and threatened the well-being of patients on the unit. 56.1(A) ¶ 9. As a result, the August 1992 written warning was given to King and she was given until November 13, 1992, to improve her performance. 56.1(A) ¶ 13, Def. Ex. 10 at 2-3.

Clearly, even assuming that King could establishes a *prima facie* case, the reasons given for the issuance of the August 1992 warning had a legitimate, non-discrimnatory basis. In fact, after King complained of harassment and discrimination as a result of the warning, an Administrative

8

Board of Investigation was appointed which concluded that not only was there no discrimination but substantiated King's long record of poor performance. Def. Ex. 4A. Even by King's own testimony, she had no basis to challenge the Administrative Board's findings or that the board was discriminatory against her. Moreover, King has presented no evidence that the reasons for the August 1992 warning were pretextual.

2.  **Failure to Receive Performance Evaluation for the 1992-1993 and Denial of January 1993 Pay Increase**

King next alleges that the VA failed to provide her with a performance evaluation in the 1992-1993 time period and denied her a January 1993 pay increase as a result of the continuing discrimination against her. The record before this court, however, demonstrates that even after King received the August 1992 warning, her performance continued to deteriorate, thus effectively preventing a performance evaluation which would give her a pay increase in January 1993. These actions were justified based upon the King's work record and not upon discrimination.

As discussed above, King's job performance had already been a concern in past years. In the August 1992 warning, King was given a detailed listing of her inadequate performance since February 11, 1992 (Def Ex. 10 at 1), and the VA again placed her on a PIP to assist her improve her performance. *Id.* at 2. Because her performance while on the PIP did not improve, King was denied the January 1993 pay increase. 56.1(A) ¶ 23; Def. Ex. 17. On February 2, 1993, King was informed that her performance had not improved and that the PIP had expired. 56.1(A) ¶ 23; Def. Ex. 20.

Even assuming that King could establish a *prima facie* case of discrimination, based upon the entire record, the VA has articulated legitimate, non-discriminatory reasons for its actions. King

9

has presented no direct evidence of a discriminatory or retaliatory motive. Nor has King presented any evidence that the VA's reasons were pretextual.

### 3. Failure of the VA Staff to Assistant in Completion Worker's Compensation Claims

King next alleges that the VA failed assist her in the processing of three worker's compensation claims that she filed in 1992 and 1993. She claims that these alleged failures to assist her caused her to use sick leave and annual leave for the work related incidents. The record before this court demonstrates that the VA did not obstruct the processing of her worker's compensation claims. In fact, King's supervisors provided the requisite assistance and did not delay nor hinder her worker's compensation claims.

Starting in January 1992, King filed three worker's compensation claims. 56.1(A) ¶ 8, 18, 25: Def. Exs. 6, 14, 19. Normally, the employee is to notify their supervisor of the incident, and after the employee fills out their portion of the claim form, the supervisor fills out their appropriate part and signs the form. Def. Ex. 2B at 8. The claim form is then turned over to the Personnel Department for completion of the processing. *Id.* at 8. In each of King's three claims, this procedure was followed. 56.1(A) ¶ 9, 19, 25; Def. Exs. 6, 14, 19. If further questions about a claim form arise, the employee is referred to the Personnel Department. Def. Ex. 2B at 8. Any decision about leave time was the prerogative of the Personnel Department. Def. Ex. 2A at 10-11. King was aware of the process, as she had been referred to Personnel on several occasions on issues relating to the claims process. Def. Ex. 2A at 10-12.

Assuming that King can establish a *prima facie* case of discrimination, based upon the entire record, King has presented no direct evidence of a discriminatory or retaliatory motive by the VA in its handling of her worker's compensation claims. The forms were signed and processed by her

10

supervisor's at the time. Any decision by the Personnel Department as to use of leave was not a decision of King's regular supervisors. King can point to no evidence that a supervisor intentionally obstructed the process, much less that the alleged obstruction was based upon a discriminatory or retaliatory reason.

### 4. Termination From the VA in 1993

Finally, King asserts that her 1993 removal was also the result of discrimination. However, the entire record before this court is full of instances where prior to April 1993, King was put on notice of her unacceptable work performance. Additionally, she had been provided numerous opportunities to improve her performance. As discussed in detail below, King's removal was for legitimate, non-discriminatory reasons.

In August 1992, King was placed on another PIP based in large part as a result of the VA treatment team memorandum citing King's lack of interpersonal skills, lack of courtesy, unwillingness to assist others and otherwise poor job performance. Def. Ex. 9 at ¶ 2-3. King's performance posed a serious problem for her fellow workers and threatened the well-being of patients on the medical unit. *Id.* at ¶ 3. Because King's performance failed to improve while on the PIP, removal was proposed in April 1993. 56.1(A) ¶ 22, 23, 30; Def. Exs. 17, 23. The proposed removal letter cited 19 instances of continued poor performance after the implementation of the August 1992 PIP. Def. Ex. 23 at 1-4.

Clearly, the VA has articulated legitimate, non-discriminatory reasons for removing King. King has presented no direct evidence of a discriminatory or retaliatory motive. Additionally, King has presented no evidence that the VA's reasons for her removal were pretextual. Even assuming

11

that King can establish a *prima facie* case of discrimination, she cannot counter the legitimate, non-discriminatory reasons advanced by the VA for its actions.

A showing of pretext does not address the correctness or desirability of employment decisions. Rather, it addresses only the issue of whether the employer honestly believes in the reasons it offers. *Kralman v. Illinois Department of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir.), *cert. denied*, 115 S. Ct. 359 (1994). Actions brought pursuant to Title VII are not intended to limit the traditional hiring and firing prerogatives of employers, they are intended only to prohibit deliberate discrimination. See *Bruno v. City of Crown Point*, 950 F.2d 355, 364 (7th Cir. 1991), *cert. denied*, 112 S. Ct. 2998 (1992). Accordingly, in order to successfully meet the pretext burden, a plaintiff must not only prove defendant's proffered reason false, but plaintiff must also establish a causal link demonstrating that the discrimination was a motivating factor in the personnal action or inaction. *See Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997).

King merely *speculates* that the reasons for the VA actions were discriminatory. Mere speculation is not enough to overcome a lack of evidence demonstrating that the VA's reasons were pretextual for discrimination. "Inferences and opinions must be grounded on more than flights of fancy, speculation, hunches, intuitions or rumors and discrimination law would be unmanageable if disgruntled employees ... could defeat summary judgment by affidavits speculating about the defendant's motives. There would be no summary judgment in age discrimination cases." *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1995).

To avoid summary judgment, a plaintiff must do more than merely argue that the trier of fact might disbelieve all of the defendant's evidence; a plaintiff must offer substantial affirmative evidence to support that opinion. *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 456-58 (7th

Cir. 1991), *cert. denied*, 112 S.Ct. 2995 (1992). In general, an employee may be terminated for "any reason, good or bad, or for no reason at all, as long as the employer's reason is not proscribed by a Congressional statute." *Kahn v. U.S. Secretary of Labor*, 64 F.3d 271, 279 (7th Cir. 1995). The burden of persuasion always remains upon the plaintiff particularly after the defendant has presented a legitimate, non-discriminatory reason. *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742, 2748-49 (1993). Plaintiff must prove that she would not have been discharged but for her employer's motive to discriminate. *Umpleby v. Potter*, 69 F.3d 209 (7th Cir. 1995).

In this case, King has failed to present any evidence that her termination or any prior action was discriminatory. The substantial evidence in this case establishes that even before plaintiff contacted the EEO in 1992, her work was deficient, and she was told to improve; there is no evidence that the VA concocted or created evidence to support her termination. This court need not determine whether the termination was a prudent business practice or based on incorrect information, as this court's inquiry is limited to whether the employer gave an honest explanation of its behavior. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.), *cert.denied*, 484 U.S. 977 (1987). This court's role is not that of a "super personnel department" to review with hindsight the correctness of the employer's personnel decisions. *Dale v. Chicago Tribune*, 797 F.2d 458, 464 (7th Cir. 1986), *cert. denied*, 479 U.S. 1066 (1987).

In summary, the issue to be decided is not whether the VA made a decision that was right or wrong; the issue is whether the VA relied on an impermissible reason in making its decisions. *Rand*, 42 F.3d at 1145-46; *Gustovich v. ATT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). Here, there is simply no evidence of an impermissible reason.

13

## Conclusion

For the reasons stated above, this court should grant summary judgment for the defendant and against the King on all allegations in the complaint.

                                              Respectfully submitted,

                                              PATRICK J. FITZGERALD
                                              United States Attorney

                                              By: *Daniel E. May*
                                              DANIEL E. MAY
                                              Assistant United States Attorney
                                              219 South Dearborn Street
                                              Chicago, Illinois 60604
                                              (312) 353-8694